E-FILED
Wednesday, 16 December, 2020  05:10:51 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 17-cr-30057** |
| | ) | |
| **ROBERT PORTER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court are Defendant Robert Porter's Second Motion for Compassionate Release (d/e 43) and Supplemental Amended Motion for Compassionate Release (d/e 48) requesting a reduction in Defendant's term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the motions are DENIED.

## I. BACKGROUND

On January 5, 2018, Defendant pleaded guilty to one count of possession with intent to distribute heroin in violation of 21 U.S.C. 841(a)(1) and (b)(1)(C). Minute Entry, Jan. 5, 2018. On May 14, 2018, the undersigned District Judge sentenced Defendant to 100

months' imprisonment, which was substantially below the guidelines range of 188 to 235 months.  Minute Entry, May 14, 2018; Judgment 2, d/e 33.  The Court also imposed a six-year term of supervised release.

Defendant previously requested compassionate release due to his health issues and the COVID-19 pandemic.  See Mem. Law. Supp. Compassionate Release 1, d/e 36.  Defendant is forty-one years old and suffers from asthma.  Id.  The Court denied Defendant's first motion for compassionate release on May 15, 2020, because Defendant's asthma appeared to be well managed and because the facility Defendant resided in at the time—FPC Duluth—had no cases of COVID-19.  See Opinion 6-7, d/e 41. Since the time Defendant's first Motion for Compassionate Release was denied, there has been at least one confirmed case of COVID-19 at FPC Duluth.  Second Mot. for Compassionate Release 2. Defendant's Second Motion for Compassionate Release requests compassionate release again based on Defendant's health conditions and the COVID-19 pandemic, arguing that the existence of confirmed cases of COVID-19 in Defendant's facility constitutes a change in circumstances sufficient to support compassionate

release.  Id.  The Second Motion for Compassionate Release also notes that the Centers for Disease Control and Prevention's (CDC) guidelines concerning asthma and obesity have changed since Defendant filed his first Motion for Compassionate Release.  Id. at 7.

If released, Defendant originally proposed to live with his mother and his fiancee and her children and grandchild in Chicago, Illinois.  See Mem. Law. Supp. Compassionate Release 29. According to Defendant's Second Motion for Compassionate Release, Defendant's mother has passed away since the Court denied Defendant's first Motion for Compassionate Release.  Second Mot. for Compassionate Release 6.  Defendant's Supplemental Amended Motion for Compassionate Release addresses the proposed living situation, contending that the proposed residence is more spacious and comfortable than the Government makes it out to be.

The United States Probation Office addressed Defendant's first request for compassionate release in a Memorandum (d/e 40), concluding that Defendant's proposed residence if he were released would be an acceptable living situation for Defendant.  Id. at 2.

Probation's Memorandum also notes that Defendant has no disciplinary record from his time in the custody of the Bureau of Prisons.  Id. at 1.  According to Probation's Memorandum, Defendant submitted a request for compassionate release to the warden of FPC Duluth, which the warden denied on April 14, 2020. Id.

The Government filed a Response (d/e 45) and Supplemental Response (d/e 47) Opposing Defendant's Second Motion for Compassionate Release.  In the Response, the Government argues that Defendant's health conditions are well controlled while in the Bureau of Prisons' (BOP) custody and that the Court should deny compassionate release based on Defendant's criminal history. Resp. 10-11.  The Government further details the procedures that BOP has implemented to curb the spread of the virus in its facilities.  Id. at 3-10.  The Government's Supplemental Response explains the discrepancies between BOP's counting of active confirmed cases in its facilities and BOP's tracking of COVID-19 testing statistics in its facilities.  See Supplemental Resp. 2; Olt Decl. ¶¶ 3, 4, d/e 47-1.

At the time Defendant filed his first and second Motions for

Compassionate Release, he resided at FPC Duluth in Duluth, Minnesota.  Since the Second Motion for Compassionate Release was filed, Defendant has been transferred to FCI Oakdale II in Oakdale, Louisiana.  See Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last accessed December 9, 2020).

Because Defendant submitted a request for compassionate release to the warden of FPC Duluth prior to his transfer to a different BOP facility, the Court directed the parties to brief the effect of the transfer on the exhaustion requirement in the compassionate release statute.  See 18 U.S.C. § 3582(c)(1)(A) (referring to "the lapse of 30 days from the receipt of [a request for compassionate release] by the warden of the defendant's facility").  In response to the Court's order, the parties filed a Joint Position on the Defendant's Exhaustion of Administrative Remedies, d/e 49, in which the parties "agree that the defendant's transfer from one BOP facility to another does not affect the issue of exhaustion."  Joint Position 2 (citing United States v. Davidson, 2020 WL 4877255 at *6 (W.D. Pa. Aug. 20, 2020)).

Defendant's projected release date is October 10, 2024. Bureau of Prisons, Find an Inmate,

https://www.bop.gov/inmateloc/ (last accessed December 9, 2020).

According to the BOP website, as of December 9, 2020, FCI Oakdale

II has four active confirmed inmate cases of COVID-19 and eleven

active confirmed staff cases. See COVID-19 Cases, Federal Bureau

of Prisons, https://www.bop.gov/coronavirus/ (last accessed

December 9, 2020).  Thirty-one inmates and six staff members at

the facility have recovered from the disease, though there has been

one death at the facility.  Id.

## II. ANALYSIS

As a general matter, the Court is statutorily prohibited from

modifying a term of imprisonment once it has been imposed.  See

18 U.S.C. § 3582(c).  However, several statutory exceptions exist,

one of which allows the Court to grant a defendant compassionate

release if certain requirements are met.  See 18 U.S.C. §

3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory

language at 18 U.S.C. § 3582(c)(1)(A).  See First Step Act of 2018,

Pub. L. No. 115-391, 132 Stat 5194.  Prior to the First Step Act, the

Court could grant a defendant compassionate release only if the

Director of BOP filed a motion seeking that relief.  With the

enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now allows an inmate to file with the Court a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion or waiting 30 days from when the inmate made his or her request, whichever is earlier. The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

In this case, the Government concedes that Defendant submitted a request for compassionate release to the warden of what, at that time, was his BOP facility—FPC Duluth—which the

warden denied in April 2020.  Resp. 3.  In the parties' Joint Position on the Defendant's Exhaustion of Administrative Remedies, the parties agree that Defendant's transfer from FPC Duluth to FCI Oakdale II does not affect the exhaustion requirement, stating "[t]he defendant's previous exhaustion of his administrative remedies via filing with the warden at the BOP facility in Duluth, Minnesota satisfies the exhaustion requirements of Title 18, United States Code, Section 3582(c)(1)(A) in this case."  Joint Position 2.  As the Seventh Circuit has recently noted in the context of compassionate release, "[f]ailure to exhaust administrative remedies is an affirmative defense, . . . not a jurisdictional issue that the court must reach even if the litigants elect not to raise it."  United States v. Gunn, --- F.3d ----, No. 20-1959, 2020 WL 6813995 (7th Cir. Nov. 20, 2020).  Therefore, the Court finds the Government has waived any objection to the exhaustion requirement that might be raised in this case and finds that Defendant has met the 30-day requirement pursuant to 18 U.S.C. § 3582(c)(1)(A).

The spread of COVID-19 has presented extraordinary and unprecedented challenges for the country and poses a serious issue for prisons.  Due to the infectious nature of the virus, the Centers

for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social distancing and isolation.  Social distancing can be difficult for individuals living or working in a prison.

The Court must consider whether "extraordinary and compelling reasons warrant such a reduction" in a defendant's sentence and whether such a reduction is "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  Even if extraordinary and compelling circumstances warranting a reduction in a defendant's sentence exist, the Court must then "consider[ ] the factors set forth in section 3553(a) to the extent that they are applicable" in order to determine if a sentence reduction is appropriate under the particular circumstances of the case.  18 U.S.C. § 3852(c)(1)(A). Having considered the relevant factors set forth in 18 U.S.C. § 3553(a), the Court concludes that those factors weigh against reducing Defendant's term of imprisonment.

Defendant is a forty-one-year-old African American male who has been diagnosed with asthma.  Second Mot. for Compassionate Release 7.  According to the BOP medical records filed in this case,

Defendant has a body mass index (BMI) of 33.7, which is considered obese.  <u>See</u> Clinical Encounter Note, d/e 35 at Page ID 11.  The BOP medical records reflect that Defendant has been counseled multiple times regarding the importance of diet and exercise in managing his weight.  BOP Medical Records, d/e 46 at Page ID 139, 146.

On October 6, 2020, the Centers for Disease Control and Prevention (CDC) revised its guidelines concerning persons who are at higher risk for severe illness from COVID-19 based on the available evidence.[1]  According to the CDC's current guidance, obesity—defined as a body mass index greater than 30—increases the risk that a person will suffer severe complications from COVID-19.  Since the CDC's guidelines were revised, the Government has conceded that, given the COVID-19 pandemic, obesity constitutes an extraordinary and compelling reason that may serve as the basis for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).  Just

---

1. <u>See</u> Coronavirus Disease 2019 (COVID-19) – People at Increased Risk of Severe Illness – People with Certain Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed December 9, 2020).

because the Government concedes that a medical condition is an extraordinary and compelling reason, however, does not mean Defendant is entitled to compassionate release.

Defendant's diagnosis of asthma is a condition that according to the CDC only might increase the risks of COVID-19, and only when that condition is moderate to severe.  See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#asthma (noting that "[h]aving moderate-to-severe asthma might increase your risk for severe illness from COVID-19").  According to Probation's Memorandum, Defendant is able to manage his asthma with the use of an inhaler two or three times a month.  Mem. 1.  The BOP medical records filed in this case reflect that in January of this year, Defendant was described by BOP medical staff as having "childhood onset asthma that resolved."  Clinical Encounter Note, d/e 46 at Page ID 146.  The records go on to indicate that Defendant's "last asthma attack was about 20 years ago and he was never hospitalized."  Id.  Finally, the records state that as of January 2020, Defendant "has not had an inhaler in a while and has not had a problem."  Id.

While there are currently four active inmate cases of COVID-19 at Defendant's facility, there are also thirty-one inmates at the facility who have contracted COVID-19 and recovered. The Government's response details BOP's efforts to address the virus, and for now, those efforts appear to be working at FCI Oakdale II.

Finally, the Court must consider the factors set out in 18 U.S.C. § 3553(a). Defendant is currently serving a combined 100-month sentence for possession with intent to distribute heroin. The sentence imposed by the Court was far below the recommended guideline sentence of 188 to 235 months. While the offense for which Defendant is presently incarcerated did not involve violence, Defendant has a prior conviction for attempted murder, as well as multiple arrests for violent offenses including murder, attempted murder, and aggravated battery. PSR, d/e 24. Further, Defendant has served only about one third of his sentence and has nearly four years remaining on his sentence.

The Court has considered the factors in § 3553(a)—in particular the need to protect the public from further crimes of the Defendant—and concludes that they do not entitle Defendant to compassionate release. The Court also finds that Defendant is still

a danger to the community.  The Court, taking all the relevant facts into account, finds that a reduction in Defendant's term of imprisonment is not warranted.

### III. CONCLUSION

For the reasons set forth above, Defendant Robert Porter's Second Motion for Compassionate Release (d/e 43), Supplemental Amended Motion for Compassionate Release (d/e 48), and second pro se Motion for Compassionate release (d/e 42) are DENIED.


ENTER:  December 16, 2020

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE